# Nos. 16-70496, 16-70497

## In the United States Court of Appeals for the Ninth Circuit

ALTERA CORPORATION AND SUBSIDIARIES,

*Petitioner-Appellee*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant*.

ON APPEAL FROM THE DECISIONS OF THE UNITED STATES TAX COURT

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF PETITIONER-APPELLEE AND AFFIRMANCE**

Kate Comerford Todd
Steven P. Lehotsky
Warren Postman
U.S. CHAMBER LITIGATION CENTER
1615 H St., N.W.
Washington, D.C. 20062
(202) 463-5337

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com

*Counsel for* Amicus Curiae

## RULE 26.1 DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America is not a publicly traded corporation. It has no parent corporation, and there is no public corporation that owns 10% or more of its stock.

## TABLE OF CONTENTS

**Page**


INTEREST OF *AMICUS CURIAE* .......... 1

SUMMARY OF ARGUMENT .......... 3

ARGUMENT .......... 4

I. The Tax Court Properly Concluded that the APA Applies Fully to IRS Rulemaking .......... 4

II. Applying Traditional Administrative Law Principles, the Tax Court Correctly Concluded that the Treasury Regulation Violates the APA .......... 11

III. Allowing the IRS to Ignore or Bend the APA Would Introduce Great Uncertainty for the Business Community and Undermine the National Economy .......... 18

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) .......... 6

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ... 14

*Cohen v. United States,* 650 F.3d 717 (D.C. Cir. 2011) (en banc) ......... 6, 7

*Dickinson v. Zurko*, 527 U.S. 150 (1999) .......... 6

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) ............. 18, 19

*FCC v. Fox Television Stations*, 556 U.S. 502 (2009) .......... 17, 19

*Home Box Office, Inc. v. FCC*, 567 F.2d 9 (D.C. Cir. 1977) .......... 15

*Mayo Foundation for Medical Education and Research v. United States*, 562 U.S. 44 (2011) .......... 6

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto Insurance Company*, 463 U.S. 29 (1983) .......... passim

*Northwest Environmental Defense Center v. Bonneville Power Administration*, 477 F.3d 668 (9th Cir. 2007) .......... 12

*Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015) .......... 14

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) .......... 9, 10, 16

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) .......... 12

**Statutes**

5 U.S.C. § 701 .......... 5

5 U.S.C. § 706 .......... 11, 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

## Other Authorities


Paul L. Caron, *Tax Myopia, or Mamas Don't Let Your Babies Grow Up to Be Tax Lawyers*, 13 Va. Tax Rev. 517 (1994)....................................4

Kristin Hickman, Altera Corp. & Subs. v. Commissioner*: The Tax Court Delivers an APA-Based Smackdown*, TaxProf Blog (July 28, 2015), http://taxprof.typepad.com/taxprof_blog/2015/07/hickman-altera-corp-subs-v-commissioner-the-tax-court-delivers-an-apa-based-smackdown.html ......................................................................7, 8, 12

Kristin Hickman, *The Need for* Mead*: Rejecting Tax Exceptionalism in Judicial Deference*, 90 Minn. L. Rev. 1537 (2006) ..................................5

Stephanie Hoffer & Christopher J. Walker, *The Death of Tax Court Exceptionalism*, 99 Minn. L. Rev. 221 (2014) ........................................5

Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291 (2003).............20

Adrian Vermeule, Encino *Is Banal*, Yale J. on Reg.: Notice & Comment (June 23, 2016), http://yalejreg.com/nc/encino-is-banal-by-adrian-vermeule/ ...........................................................................................18

## INTEREST OF *AMICUS CURIAE*[*]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the Nation's business community.

This case presents a question of significant importance to the Chamber and its members: Whether the U.S. Department of Treasury (Treasury) and Internal Revenue Service (IRS) may evade their obligation to comply with the Administrative Procedure Act (APA) and related administrative law doctrines. Here, the IRS failed in a number of criti-

[*] All parties consent to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(c)(5), the Chamber certifies that: (a) no party's counsel authored this brief in whole or in part; (b) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (c) no person, other than the Chamber, its members, or its counsel, contributed money that was intended to fund preparing or submitting this brief.

cal respects to engage in reasoned decisionmaking as required by the APA and Supreme Court precedent. Such arbitrary and capricious rulemaking imposes tremendous negative consequences for the Nation's business community and the national economy.

The business community has a particular interest in the interpretation and application of the rules governing the administrative process. Many businesses face a growing array of regulations, with tax regulations being among the most complex. When planning their operations and investing for the future, businesses have no choice but to rely on those regulations. Businesses, moreover, critically depend on the procedures and protections that the APA provides against arbitrary or otherwise unlawful agency action. Given the breadth of its membership and its long history of challenging regulations that violate the APA, the Chamber is uniquely positioned to speak to the administrative law principles implicated by this case as well as the consequences to the Nation's business community of arbitrary agency regulatory activities that upset settled expectations.

## SUMMARY OF ARGUMENT

**I.** The Supreme Court, the D.C. Circuit, and now the Tax Court have properly rejected the IRS's "tax exceptionalism" position that its regulatory activities are not fully governed by the APA and related administrative law doctrines. That rejection is particularly important here, where the IRS seeks judicial deference under the *Chevron* doctrine for its regulatory activities while attempting to evade the APA's protections against arbitrary and capricious agency action. This Court should likewise confirm that the IRS must play by the same well-established rules of the road that govern the rest of the federal regulatory state.

**II.** If normal administrative law rules are applied to this Treasury regulation, then it is not a close call that the regulation must be struck down as arbitrary and capricious under the APA. As fifteen members of the Tax Court unanimously detailed at length in the decision below, the IRS committed a number of fatal errors during its rulemaking process. In particular, the IRS failed to collect, much less examine, the relevant data to engage in reasoned decisionmaking. The IRS did not respond to numerous significant comments made during the comment period. And, once in court, the IRS improperly attempted to

justify its rule based on alternative grounds not raised during the rule-making process—grounds that would result in a change in the IRS's longstanding position without any accompanying explanation.

**III.** The IRS's failure to comply with the APA has substantial negative consequences for the Nation's business community and thus the national economy. Arbitrary and capricious changes to federal regulations uproot settled expectations among regulated businesses. This is particularly true in the context of tax regulation, where individuals and businesses rely heavily on the existing law when directing their business operations and implementing their investment strategies.

## ARGUMENT

### I. The Tax Court Properly Concluded that the APA Applies Fully to IRS Rulemaking

For decades, tax law has suffered from what has been coined "tax exceptionalism"—the misperception that tax regulations are not governed by the same long-standing rules of administrative law that generally apply to any federal agency rulemaking. In recent years, however, courts have correctly rejected this "tax myopia."[1] In the decision be-

[1] *See* Paul L. Caron, *Tax Myopia, or Mamas Don't Let Your Babies Grow Up to Be Tax Lawyers*, 13 Va. Tax Rev. 517, 518-19 (1994); *see al-*

low, the Tax Court correctly held that the IRS is bound by the same rules—the APA and related administrative law doctrines—that govern the rest of the federal regulatory state. The Tax Court's decision here necessarily follows from the text of the APA as well as recent Supreme Court and circuit court precedent rejecting tax exceptionalism.

First and foremost, the APA sets the default rules for all federal "agency" action and judicial review thereof. Under the APA, "agency" is defined to include "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include," among other entities, Congress and "the courts of the United States." 5 U.S.C. § 701(b). The IRS, an executive agency within Treasury, is plainly an "agency" for purposes of the APA. As the Supreme Court has long held, "a reviewing court must apply the APA's court/agency review standards in the absence of an exception."

---

*so* Kristin E. Hickman, *The Need for* Mead*: Rejecting Tax Exceptionalism in Judicial Deference*, 90 Minn. L. Rev. 1537, 1541 (2006) (describing the "perception of tax exceptionalism that intrudes upon much contemporary tax scholarship and jurisprudence"); Stephanie Hoffer & Christopher J. Walker, *The Death of Tax Court Exceptionalism*, 99 Minn. L. Rev. 221, 222-24 (2014) (further chronicling how federal courts have begun to reject tax exceptionalism).

*Dickinson v. Zurko*, 527 U.S. 150, 154 (1999). Congress has provided no such exception to the IRS or Treasury.

To the contrary, in *Mayo Foundation for Medical Education and Research v. United States*, 562 U.S. 44, 55-56 (2011), the Supreme Court refused to apply a different standard of review to a Treasury and IRS interpretation of the tax code than is applied to other federal regulations. In holding that tax regulations can be eligible for deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the unanimous *Mayo Foundation* Court refused "to carve out an approach to administrative review good for tax law only," noting that it has "expressly '[r]ecogniz[ed] the importance of maintaining a uniform approach to judicial review of administrative action.' " *Id.* at 55 (quoting *Dickinson*, 527 U.S. at 154). Thus, the Court found "no reason why [judicial] review of tax regulations should not be guided by agency expertise pursuant to *Chevron* to the same extent as [judicial] review of other regulations." *Mayo Foundation*, 562 U.S. at 56.

Similarly, in *Cohen v. United States,* 650 F.3d 717, 736 (D.C. Cir. 2011) (en banc), the D.C. Circuit held en banc that the APA's judicial review provisions apply with full force to a form of IRS guidance known

as a notice. In reaching this conclusion, the court remarked that "[t]he IRS is not special in this regard; no exception exists shielding it—unlike the rest of the Federal Government—from suit under the APA." *Id.* at 723. The court acknowledged the argument that "[t]here may be good policy reasons to exempt IRS action from judicial review" under the APA. *Id.* at 736. The D.C. Circuit emphasized, however, that "Congress has not made that call. And we are in no position to usurp that choice . . . ." *Id.* (citations omitted).

To be sure, the IRS has opportunistically argued for tax exceptionalism in some cases (e.g., *Cohen*) and for general administrative law in others (e.g., *Mayo Foundation*). Indeed, Professor Kristin Hickman, one of the leading scholars on the intersection of tax and administrative law, has explained that "the IRS and the Department of Justice have repeatedly pursued a narrow construction of *Mayo Foundation*."[2] The unanimous decision of the Tax Court in this case has rightly put an end to such strategic tax exceptionalism.

---

[2] Kristin Hickman, Altera Corp. & Subsidiaries v. Commissioner*: The Tax Court Delivers an APA-Based Smackdown*, TaxProf Blog (July 28, 2015), http://taxprof.typepad.com/taxprof_blog/2015/07/hickman-altera-corp-subs-v-commissioner-the-tax-court-delivers-an-apa-based-smackdown.html [hereinafter Hickman, *APA-Based Smackdown*].

The Tax Court's decision is fully consistent with the text of the APA and Internal Revenue Code, as well as the Supreme Court's guidance in *Mayo Foundation* and the D.C. Circuit's decision in *Cohen*. Indeed, as Professor Hickman has explained, "*Altera* represents a natural extension of the Supreme Court's reasoning in the *Mayo Foundation* case, reflecting the spirit of that decision's rejection of tax exceptionalism from general administrative law requirements, doctrines, and norms." Hickman, *APA-Based Smackdown*, *supra*.

It is imperative that this Court uphold the Tax Court's core holding that the APA applies with full force to IRS rulemaking. Such holding is particularly important after *Mayo Foundation*. As discussed above, the *Mayo Foundation* Court accorded *Chevron* deference to an IRS statutory interpretation because it discerned no reason to create a special administrative law doctrine that applied only to tax. Yet if the IRS is to receive the benefit of *Chevron* deference, it is doubly important that the IRS also be bound by the administrative law constraints that accompany binding agency rulemaking. The IRS has at times attempted to reap administrative law's benefits of agency discretion—such as *Chevron* deference—while avoiding its constraints—such as the APA's

full notice-and-comment rulemaking requirements, judicial review under the APA's arbitrary and capricious standard, and the inability under *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (*Chenery I*) to advance new theories and argument in court that were not advanced in the agency action under review.

This case is illustrative. Before the Tax Court, the IRS sought *Chevron* deference for its statutory interpretation, but disagreed that the regulation at issue is "a legislative rule," which would subject it to all of the APA's notice-and-comment rulemaking requirements. ER49.[3]

Similarly, the IRS argued that administrative law's reasoned decisionmaking requirement, as articulated by the Supreme Court in *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto Insurance Company*, 463 U.S. 29 (1983), did not apply to this rulemaking, even though the new Treasury regulation departs from the IRS's prior position without reasoned explanation. ER51. In arguing why the reasoned decisionmaking standard that applies to the rest of the regulatory state should not apply to the IRS, the IRS claimed that "the Supreme Court

[3] Despite taking this position, the IRS "declined to argue this issue on brief or at oral argument," asserting instead that it had nevertheless complied with the notice-and-comment requirements. ER49.

has never, and [the Tax] Court has rarely, reviewed Treasury regulations under *State Farm*." ER55.

Moreover, as detailed at length in Altera's opening brief (at 38-70), now that the IRS is in court, it has essentially abandoned the stated rationale for the regulation (the arm's-length standard) and, instead, attempted to defend its rule on a new argument (the commensurate-with-income standard). Apparently the IRS does not feel it should be bound by the *Chenery* doctrine, which holds that an agency action "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Chenery I*, 318 U.S. at 95. Nor does the IRS seem to consider itself bound by Supreme Court precedent that an agency must provide reasons in the rule itself for changing its position.

The dangers inherent in the IRS's tactics should be plain: the IRS wants to take advantage of the agency discretion afforded by judicial deference doctrines that apply to administrative interpretations of law without also being bound by the constraints administrative law imposes on federal agency action in order to ensure an agency's discretion is not exercised in an arbitrary and capricious manner. The Supreme Court,

the D.C. Circuit, and now the Tax Court have rejected any such claims of tax exceptionalism. This Court should send a clear message to the IRS that it must play by the same rules of the road that govern the rest of the federal regulatory state.

## II. Applying Traditional Administrative Law Principles, the Tax Court Correctly Concluded that the Treasury Regulation Violates the APA

When reviewed under the APA and traditional administrative law doctrines, this regulation provides a textbook example of an agency's failure to fulfill the APA's reasoned decisionmaking requirements for notice-and-comment rulemaking.

**1.** The Tax Court correctly concluded that the regulation is invalid under the APA's judicial review provisions. The APA commands that a reviewing court must "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court has explained that, to survive under the APA's arbitrary and capricious review, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection

between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotations marks omitted).

In what has subsequently been termed administrative law's reasoned decisionmaking requirement (or "hard look" review), the *State Farm* Court provided further instruction on this review standard:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given."

*Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (*Chenery II*); *accord Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007) (explaining that *State Farm* provides "the principles governing the scope of our review under the arbitrary and capricious standard of § 706(2) of the APA").

As Professor Hickman has noted, "examining the rulemaking record meticulously and at some length, the [Tax Court in the decision below] concluded that Treasury and the IRS simply failed to satisfy *State Farm*'s reasoned decisionmaking requirements." Hickman, *APA-Based*

*Smackdown*, *supra*. Critically, despite applying a traditionally fact-intensive arm's-length standard, the IRS did not even attempt to conduct any factfinding regarding the rule's central assumption that unrelated parties entering into qualified cost-sharing agreements would generally share stock-based compensation costs. ER60 (noting IRS's concession that it did no factfinding). In other words, as the Tax Court correctly concluded, the IRS "entirely failed to consider an important [empirical] aspect of the problem." *State Farm*, 463 U.S. at 43.

The hallmark of arbitrary and capricious review is that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotations marks omitted). The fifteen tax experts on the Tax Court who carefully considered this Treasury regulation unanimously agreed that "the final rule lacks a basis in fact," that "Treasury failed to rationally connect the choice it made with the facts found," and that "Treasury's conclusion that the final rule is consistent with the arm's-length standard is contrary to all of the evidence before it." ER77.

Indeed, it is telling that a group of law professors has submitted an *amicus curiae* brief in support of the IRS that purports to provide an "alternative argument" that theorizes and assesses potential empirical evidence on "what unrelated parties would have done in comparable circumstances, and to which evidence from uncontrolled transactions, properly adjusted, could be relevant." Brief of *Amici Curiae* J. Richard Harvey *et al.*, at 2-3. It is of course not appropriate under the APA to consider such evidence and arguments that were not part of the administrative record—much less expressly considered in the agency's final rule—to uphold an agency's rule. But *amici*'s arguments confirm the agency's fatal error in not conducting factfinding during the notice-and-comment process.

**2.** The IRS's failure to engage in reasoned decisionmaking as required by the APA and *State Farm* is exacerbated by its failure to consider, much less respond to, numerous relevant and significant comments lodged during the public comment period. It is blackletter administrative law that "[a]n agency must consider and respond to significant comments received during the period for public comment." *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015) (citing *Citi-*

*zens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). As the D.C. Circuit has explained, this APA-guaranteed "opportunity to comment is meaningless unless the agency responds to significant points raised by the public." *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35-36 (D.C. Cir. 1977) (footnote omitted).

The Tax Court details at length, *see* ER67-ER73, the variety of significant comments to which the IRS provided no meaningful response. Many of these comments concern the critical empirical inquiry of whether unrelated parties entering into qualified cost-sharing agreements would generally share stock-based compensation costs. The Tax Court correctly concluded that "Treasury's failure to adequately respond to commentators frustrates [the court's] review of the final rule and was prejudicial to the affected entities." ER73.

**3.** In an attempt to salvage its rule after the fact, the IRS argued before the Tax Court that the rule can be justified under the commensurate-with-income standard and that the IRS could issue regulations that modify—or even abandon—the arm's-length standard. The Tax Court properly rejected this argument based on two bedrock principles of administrative law. ER57-ER64.

First, as the Supreme Court has long held, "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Chenery I*, 318 U.S. at 95. Neither the proposed rule nor the final rule suggested that the IRS intended to abandon the traditional arm's-length standard, and thus any mention of the commensurate-with-income standard in the rule was not a separate and independent rationale for the agency's decision.[4]

Second, to the extent the IRS intended to change its longstanding position that the commensurate-with-income standard is consistent with the arm's-length standard, it was certainly required to at least

[4] It is revealing that another group of law professors has submitted an *amici curiae* brief in support of the IRS that argues that, although the IRS did not have a basis for this rule under the arm's-length standard, the commensurate-with-income standard provides independent authority for the IRS's rule. Brief of *Amici Curiae* Anne Alstott *et al.*, at 6-8, 16. Putting aside the substantive criticisms of this argument, which Altera addresses at length in its opening brief (at 38-70), *amici*'s conclusion that the arm's-length standard provides no basis for the IRS's approach is fatal to the rule. As the Tax Court correctly noted, the central basis the IRS offered for the rule was the arm's-length standard, and the commensurate-with-income standard was mentioned only in passing in the final rule. Nowhere did the IRS proclaim that it was a separate and independent ground for the regulation. *Chenery* thus does not allow this Court to consider that new argument now.

recognize in the rulemaking process that it intended to change its position. In *FCC v. Fox Television Stations*, the Supreme Court held that the APA's "requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." 556 U.S. 502, 515 (2009); *see also id.* ("And of course the agency must show that there are good reasons for the new policy.").

The Treasury regulation did not embrace the commensurate-with-income standard as an alternative and independent ground for its rule. But if Treasury had intended to depart from its longstanding reliance on the arm's-length standard, it certainly did not provide any explanation for its change in position. "Accordingly," as the Tax Court correctly concluded, "the commensurate-with-income standard, as interpreted by Treasury, cannot provide a sufficient basis for the final rule." ER59.

**4.** Basic administrative law principles also preclude the IRS from plastering over the above flaws by appealing to *Chevron* deference.

Indeed, the Supreme Court last Term once again rejected this type of argument, holding that "[a]n arbitrary and capricious regulation of

this sort is itself unlawful and receives no *Chevron* deference." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016). As Harvard Law Professor Adrian Vermeule has observed, this holding of *Encino* was "a point established long ago and confirmed in *FCC v. Fox* and *Perez v. Mortgage Bankers*."[5] *Encino*'s holding does underscore, however, that an agency may not take advantage of the discretion administrative law grants to federal agencies without also being constrained by the administrative law doctrines designed to restrain that discretion to avoid arbitrary and capricious agency behavior.

## III. Allowing the IRS to Ignore or Bend the APA Would Introduce Great Uncertainty for the Business Community and Undermine the National Economy

The IRS's arbitrary and capricious rulemaking has real-world, substantial impacts on the Chamber's members and thus the national economy. Businesses depend on clear, predictable rules—and fair and nonarbitrary administrative processes—when planning their operations and investing for their businesses. This is particularly true of tax regulations. An agency's refusal to be constrained by administrative law's

[5] Adrian Vermeule, Encino *Is Banal*, Yale J. on Reg.: Notice & Comment (June 23, 2016), http://yalejreg.com/nc/encino-is-banal-by-adrian-vermeule/.

procedural protections creates destabilizing uncertainty for the individuals, businesses, and industries regulated by those laws. Such arbitrary bureaucratic behavior, moreover, can disrupt an industry's settled expectations and investments, with profound economic consequences for the industry and, in turn, for the national economy.

This does not mean, of course, that federal agencies can never alter the regulatory landscape. But when changing existing regulations, agencies must follow the APA and related administrative law doctrines, which ensure that stakeholders have a meaningful role in preventing arbitrary, unworkable, or irrational regulation. As the Supreme Court reiterated last Term, "[i]n explaining its changed position, an agency must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino*, 136 S. Ct. at 2120 (quoting *Fox Television*, 556 U.S. at 515).

The IRS's rulemaking here falls far short of the reasoned decisionmaking required by the APA and the Supreme Court. In the process the IRS has arbitrarily upset settled expectations. This Court should affirm the Tax Court's decision to set aside this Treasury regulation as

unlawful, sending a clear message to the IRS that it must follow administrative law's longstanding rules governing agency rulemaking.[6]

## CONCLUSION

For these reasons, the Tax Court's decisions should be affirmed.

Respectfully submitted,

September 20, 2016

/s/ Christopher J. Walker

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW*
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com
* *Institutional affiliation provided for identification purposes only.*

Kate Comerford Todd
Steven P. Lehotsky
Warren Postman
U.S. CHAMBER
LITIGATION CENTER
1615 H St., N.W.
Washington, D.C. 20062
(202) 463-5337

*Counsel for* Amicus Curiae

[6] Both law professor *amici curiae* briefs suggest that if this Court finds error, it should not set aside the rule but, instead, remand without vacating the rule. It is not surprising that even the IRS has not requested this extraordinary departure from the ordinary rule in administrative law. *See, e.g.*, Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291, 381 (2003). Moreover, this unusual remedy is generally considered in the context of a petition for review of an agency rulemaking. The Chamber is aware of no case—and the law professor *amici* have cited none—where remand without vacatur was ordered in a taxpayer lawsuit challenging the IRS's deficiency determination.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(d) because it contains 3,977 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

September 20, 2016

/s/ Christopher J. Walker

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I filed the foregoing brief using this Court's Appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, with the exception of the participant listed below, whom we will serve by U.S. mail.

Robert R. Di Trolio
Clerk, U.S. Tax Court
400 Second Street, N.W.
Washington, D.C. 20217

September 20, 2016

/s/ Christopher J. Walker
Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com