# Nos. 16-70496, 16-70497

## In the United States Court of Appeals for the Ninth Circuit

ALTERA CORPORATION AND SUBSIDIARIES,

*Petitioner-Appellee*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant*.

ON APPEAL FROM THE DECISIONS OF THE UNITED STATES TAX COURT

**SUPPLEMENTAL BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF PETITIONER-APPELLEE AND AFFIRMANCE**

Steven P. Lehotsky
U.S. CHAMBER
LITIGATION CENTER
1615 H St., N.W.
Washington, D.C. 20062
(202) 463-5337

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com

*Counsel for* Amicus Curiae

## RULE 26.1 DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America is not a publicly traded corporation. It has no parent corporation, and there is no public corporation that owns 10% or more of its stock.

## TABLE OF CONTENTS

**Page**


INTEREST OF *AMICUS CURIAE* ........ 1

ARGUMENT ........ 3

I. The APA's Reasoned-Decisionmaking Requirement Protects Businesses from Engaging in a "Scavenger Hunt" When Structuring Operations and Investments ........ 4

II. *Chenery* Ensures the Public Has Fair Notice of Regulatory Obligations and Meaningful Participation in the Rulemaking Process ........ 5

III. Courts Accord No *Chevron* Deference When an Agency Engages in a Defective Rulemaking Process ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962) ................ 4

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ........................................................................ 8, 9

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) ........... 8, 9, 10

*FCC v. Fox Television Stations*, 556 U.S. 502 (2009) ............................. 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29 (1983) ................................................................................ 4, 8

*Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015) ......................... 7

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ............................................ 5, 9

*Sequoia Orange Co. v. Yeutter*, 973 F.2d 752 (9th Cir. 1992), *amended on other grounds*, 985 F.2d 1419 (9th Cir. 1993) ................................ 7

## INTEREST OF *AMICUS CURIAE*[*]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the Nation's business community.

As the Chamber noted in its *amicus curiae* brief filed on September 20, 2016, this case presents a question of significant importance to the Chamber and its members: Whether the U.S. Department of Treasury ("Treasury") and Internal Revenue Service ("IRS") may evade their obligation to comply with the Administrative Procedure Act ("APA") and

---

[*] All parties consent to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(c)(5), the Chamber certifies that: (a) no party's counsel authored this brief in whole or in part; (b) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (c) no person, other than the Chamber, its members, or its counsel, contributed money that was intended to fund preparing or submitting this brief.

related administrative law doctrines. As Judge O'Malley detailed in her dissent from the now-vacated panel opinion, the IRS failed in a number of critical respects to engage in reasoned decisionmaking as required by the APA and Supreme Court precedent. Such arbitrary and capricious rulemaking imposes tremendous negative consequences for the Nation's business community and the national economy.

The business community has a particular interest in the interpretation and application of the rules governing the administrative process. Many businesses face a growing array of regulations, with tax regulations being among the most complex. When planning their operations and investing for the future, businesses have no choice but to rely on those regulations. Businesses, moreover, critically depend on the procedures and protections that the APA provides against arbitrary or otherwise unlawful agency action. Given the breadth of its membership and its long history of challenging regulations that violate the APA, the Chamber is uniquely positioned to speak to the administrative law principles implicated by this case as well as the consequences to the Nation's business community of arbitrary agency regulatory activities that upset settled expectations.

## ARGUMENT

On September 20, 2016, the Chamber filed an *amicus curiae* brief in this case to describe how the APA fully applies to IRS rulemaking (Part I), how the Tax Court correctly concluded that the Treasury regulation at issue violates the APA in a number of ways (Part II), and how the IRS's failure to adhere to the APA and related administrative law doctrines introduces great uncertainty for the Nation's business community and thus the national economy (Part III). This supplemental *amicus curiae* brief does not endeavor to repeat those arguments, but instead responds briefly to the now-vacated panel opinion in this case.

The Chamber was encouraged by the panel majority's conclusion that "[t]he Tax Court correctly held that the APA applies to Treasury in the context of the present controversy." Slip op. at 25.[1] Saying the APA applies and actually applying the APA, unfortunately, are not one and the same. As Judge O'Malley documented in her dissent, the panel majority's opinion was inconsistent with fundamental principles of the APA and stretched administrative law "beyond its breaking point." *Id.*

[1] The Court, moreover, is to be commended for withdrawing the panel opinion, drawing a replacement for Judge Reinhardt, and setting the case for reargument.

at 47. The newly constituted panel should affirm the Tax Court for the reasons articulated by Judge O'Malley. Three points merit further discussion here, focusing on the ramifications of the panel majority's approach for the Nation's business community.

## I. The APA's Reasoned-Decisionmaking Requirement Protects Businesses from Engaging in a "Scavenger Hunt" When Structuring Operations and Investments

It is blackletter administrative law that, to survive under the APA's arbitrary and capricious review, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). As the Tax Court concluded and Judge O'Malley further detailed (slip op. at 53–62), the IRS flunked this APA test. The fifteen tax experts on the Tax Court unanimously agreed that "the final rule lacks a basis in fact," that "Treasury failed to rationally connect the choice it made with the facts found," and that "Treasury's conclusion that the final rule is consistent with the arm's-length standard is contrary to all of the evidence before it." ER77.

Judge O'Malley astutely observed the problem with this judicial failure to enforce the APA's reasoned-decisionmaking requirement: It "endorses a practice of requiring interested parties to engage in a scavenger hunt to understand an agency's rulemaking proposals." Slip op. at 47. Even assuming businesses could succeed at such scavenger hunts, the process would impose substantial costs. The regulated businesses would never know for what to search in the administrative record. The onus cannot be on businesses to anticipate what the agency will do and then to search the administrative record for scraps that would support that prediction. Rather, it is on the agency to make its intentions clear.

Businesses depend on clear, predictable rules. This is particularly true of tax regulations. The IRS's failure to provide such clarity risks disrupting an industry's settled expectations and investments, with profound economic consequences for the industry.

## II. *Chenery* Ensures the Public Has Fair Notice of Regulatory Obligations and Meaningful Participation in the Rulemaking Process

The panel majority pardoned the IRS's violation of bedrock administrative law, articulated in *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943), that "an administrative order cannot be upheld unless the

grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." As Judge O'Malley explained, neither the proposed rule nor the final rule suggested that the IRS intended to abandon the traditional arm's-length standard, and thus any mention of the commensurate-with-income standard in the rule was not a separate and independent rationale for the agency's decision. *See* slip op. at 58–62.

The panel majority strangely responded that "[t]his argument twists *Chenery*, which protects judicial deference by strengthening administrative processes, into excessive proceduralism." Slip op. at 33. Judge O'Malley aptly explained why this is not mere proceduralism but instead critical to fair and effective administrative processes, especially in the rulemaking context: "The APA's safeguards ensure that those regulated do not have to guess at the regulator's reasoning; just as importantly, they afford regulated parties a meaningful opportunity to respond to that reasoning." Slip op. at 61.

The Chamber and its members are often involved in notice-and-comment rulemaking in a variety of regulatory contexts. Based on this extensive experience, the Chamber fully concurs with Judge O'Malley's

conclusion that "Treasury's notice of proposed rulemaking ran afoul of these safeguards by failing to put the relevant public on notice of its intention to depart from the traditional arm's length analysis." *Id.* Had the IRS provided notice of this dramatic departure, the affected businesses and trade organizations would have responded vigorously and substantially during the comment period. And the IRS would have been required to respond to those significant comments in the final rule. *See, e.g.*, *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015) ("An agency must consider and respond to significant comments received during the period for public comment."); *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 758 (9th Cir. 1992) (embracing D.C. Circuit precedent that the "APA's purpose is to cause agency to respond to comments in a reasoned manner and explain how agency resolved problems"), *amended on other grounds*, 985 F.2d 1419 (9th Cir. 1993).

Simply put, confining agencies to the positions they plainly took in notice-and-comment rulemaking is not "excessive proceduralism." Slip op. at 33. It ensures the agency engages in reasoned decisionmaking and exercises its discretion in a nonarbitrary manner. An agency's *post hoc* departure from the positions it set forth during the rulemaking pro-

cess, by contrast, risks upsetting the industry's reliance interests and, in turn, negatively affecting the national economy.

## III. Courts Accord No *Chevron* Deference When an Agency Engages in a Defective Rulemaking Process

Not only did the panel majority err in concluding that "the regulations withstand scrutiny under general administrative law principles." Slip op. at 5. It compounded this error by deferring to the IRS's statutory interpretation under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See* slip op. at 37–42.

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016), is instructive. There, the Supreme Court found that the "regulation was issued without the reasoned explanation that was required in light of the [agency's] change in position and the significant reliance interests involved." *Id.* at 2126. Accordingly, the Supreme Court refused to accord any deference. *Id.* at 2127. That is because, when agency "procedures are defective, a court should not accord *Chevron* deference to the agency interpretation." *Id.* at 2125.

The IRS's procedural errors here are worse and more obvious than the agency's in *Encino*. Not only did the IRS fail to engage in reasoned decisionmaking as required by *State Farm* and the APA's arbitrary-and-

capricious standard (Part I *supra*), but it has attempted to advance a new statutory interpretation not proffered during the rulemaking, in contravention of *Chenery* and the APA's notice-and-comment requirements (Part II *supra*).

This core administrative law doctrine is likewise not mere proceduralism, but vital to protect the reliance interests of regulated entities. Here, the IRS wants to take advantage of the agency discretion afforded by *Chevron* deference without also being bound by the constraints administrative law imposes on federal agency action to ensure an agency's discretion is not exercised in an arbitrary and capricious manner. Such strategic tax exceptionalism risks introducing destabilizing uncertainty for the individuals, businesses, and industries regulated by such laws.

As the Chamber noted in its original brief (Part III), the administrative law doctrine reaffirmed in *Encino* does not forbid a federal agency from altering the regulatory landscape. But to make such a change, the agency must follow the APA and related doctrines, which ensure stakeholders have a meaningful role in preventing arbitrary, unworkable, or irrational regulation. "In explaining its changed position," the Supreme Court in *Encino* counseled, "an agency must also be cognizant

that longstanding policies may have ‘engendered serious reliance interests that must be taken into account.’ ” *Encino*, 136 S. Ct. at 2120 (quoting *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009)).

## CONCLUSION

For these reasons, the Tax Court’s decisions should be affirmed.

Respectfully submitted,

September 28, 2018

/s/ Christopher J. Walker

Steven P. Lehotsky
U.S. CHAMBER
LITIGATION CENTER
1615 H St., N.W.
Washington, D.C. 20062
(202) 463-5337

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW*
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com
* *Institutional affiliation provided for identification purposes only.*

*Counsel for* Amicus Curiae

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(d) because it contains 1,825 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

September 28, 2018

/s/ Christopher J. Walker

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I filed the forgoing brief using this Court's Appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

September 28, 2018

/s/ Christopher J. Walker

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com