**Nos. 16-70496 & 16-70497**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

ALTERA CORPORATION & SUBSIDIARIES,
*Petitioner – Appellee*,

v.

COMMISSIONER OF INTERNAL REVENUE,
*Respondent – Appellant*.

Appeal from the United States Tax Court, Nos. 6253-12, 9963-12

# SECOND SUPPLEMENTAL BRIEF FOR THE APPELLEE


Thomas Kittle-Kamp
William G. McGarrity
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

A. Duane Webber
Phillip J. Taylor
Joseph B. Judkins
BAKER & MCKENZIE LLP
815 Connecticut Avenue NW
Washington, DC 20006
Telephone:(202) 452-7000
Facsimile: (202) 452-7074

Donald M. Falk
MAYER BROWN LLP
3000 El Camino Real #300
Palo Alto, CA 94306
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
dfalk@mayerbrown.com

Brian D. Netter
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Counsel for the Appellee*

## CORPORATE DISCLOSURE STATEMENT

Intel Corporation is the parent corporation of Altera Corporation and subsidiaries. Intel is a publicly traded corporation.

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

ARGUMENT .......... 4

A. The Commissioner Has Waived or Forfeited Any Statute of Limitations Defense. .......... 4

B. 28 U.S.C. § 2401 Does Not Constrain Altera's Challenge to the Final Rule. .......... 8

1. Petitions for redetermination of a deficiency are subject to a specific limitations period within the well-developed statutory scheme for review of tax deficiencies. .......... 8

2. Altera's challenge to the Final Rule did not accrue until the Commissioner issued his deficiency notice. .......... 11

3. This case is not a "civil action." .......... 16

C. In The Alternative, The Limitations Period Should Be Tolled .......... 20

D. Even if Altera's APA Claim Is Time-Barred, *Chevron* Requires The Court To Address The Commissioner's Failure To Engage In Reasoned Decisionmaking. .......... 24

CONCLUSION .......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists*,
781 F.2d 1393 (9th Cir. 1986) .......... 11

*Alameda Books, Inc. v. City of Los Angeles*,
631 F.3d 1031 (9th Cir. 2011) .......... 5

*BFP v. Resolution Trust Corp.*,
511 U.S. 531 (1994) .......... 20

*Estate of Branson v. Commissioner*,
264 F.3d 904 (9th Cir. 2001) .......... 15

*California Sea Urchin Comm'n v. Bean*,
828 F.3d 1046 (9th Cir. 2016) .......... 16

*Cedars-Sinai Med. Ctr. v. Shalala*,
125 F.3d 765 (9th Cir. 1997) .......... 5

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
556 U.S. 221 (2012) .......... 20

*Diamond Shamrock Corp. v. Costle*,
580 F.2d 670 (D.C. Cir. 1978) .......... 22

*Dickinson v. Zurko*,
527 U.S. 150 (1999) .......... 16

*Doe v. Busby*,
661 F.3d 1001 (9th Cir. 2011) .......... 21

*Dominion Resources v. United States*,
681 F.3d 1313 (Fed. Cir. 2012) .......... 12

*Encino Motorcars, LLC v. Navarro*,
136 S. Ct. 2117 (2016) .......... 25

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*,
799 F.3d 1065 (D.C. Cir. 2015) .......... 12

*Good Fortune Shipping SA v. Commissioner*,
897 F.3d 256 (D.C. Cir. 2018) .......... 26

*Howard v. Pritzker*,
775 F.3d 430 (D.C. Cir. 2015) .......... 9, 10, 14

*Irwin v. Dept. of Veterans Affairs*,
498 U.S. 89 (1990) .......... 20

*In re J.J. Re-Bar Corp., Inc.*,
644 F.3d 952 (9th Cir. 2011) .......... 12

*JEM Broadcasting Co. v. FCC*,
22 F.3d 320 (D.C. Cir. 1994) .......... 22

*Judulang v. Holder*,
565 U.S. 42 (2011) .......... 24, 25

*Key Buick Co. v. Commissioner*,
613 F.2d 1306 (5th Cir. 1980) .......... 17

*Kwai Fun Wong v. Beebe*,
732 F.3d 1030 (9th Cir. 2013) (en banc) .......... 5, 20

*Laing v. United States*,
423 U.S. 161 (1976) .......... 13

*Mach Mining, LLC v. EEOC*,
135 S. Ct. 1645 (2015) .......... 16

*Estate of Magnin v. Commissioner*,
184 F.3d 1074 (9th Cir. 1999) .......... 18

# TABLE OF AUTHORITIES
# (continued)

**Page(s)**

*Markwardt v. Commissioner*,
64 T.C. 989 (1975) .......... 5

*Mayo Found. for Med. Educ. & Research v. United States*,
562 U.S. 44 (2011) .......... 3, 16, 25

*Maze v. IRS*,
862 F.3d 1087 (D.C. Cir. 2017) .......... 12

*McCoy v. Mass. Inst. of Tech.*,
950 F.2d 13 (1st Cir. 1991) .......... 4

*Merkel v. Commissioner*,
192 F.3d 844 (9th Cir. 1999) .......... 15

*Monetary II Ltd. P'ship v. Commissioner*,
47 F.3d 342 (9th Cir. 1995) .......... 7

*Nesovic v. United States*,
71 F.3d 776 (9th Cir. 1995) .......... 9, 16

*Oppenheim v. Campbell*,
571 F.2d 660 (D.C. Cir. 1978) .......... 18

*Ortiz v. Sec'y of Def.*,
41 F.3d 738 (D.C. Cir. 1994) .......... 11

*Pace v. DiGuglielmo*,
544 U.S. 408 (2005) .......... 21

*Perez-Guzman v. Lynch*,
835 F.3d 1066 (9th Cir. 2016) .......... *passim*

*Robinson v. United States*,
920 F.2d 1157 (3d Cir. 1990) .......... 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**


*Shiny Rock Mining Corp. v. United States*,
906 F.2d 1362 (9th Cir. 1990) .................................................... 11, 13

*Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation v. United States*,
895 F.2d 588 (9th Cir. 1990) .................................................... 9

*Smith v. Booth*,
823 F.2d 94 (5th Cir. 1987) .................................................... 12

*Spannaus v. U.S. Dept. of Justice*,
824 F.2d 52 (D.C. Cir. 1987) .................................................... 11

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
136 S. Ct. 1807 (2016) .................................................... 13

*Village of Barrington v. Surface Transp. Bd.*,
636 F.3d 650 (D.C. Cir. 2011) .................................................... 25

*Werner v. United States*,
188 F.2d 266 (9th Cir. 1951) .................................................... 17

*Wind River Mining Corp. v. United States*,
946 F.2d 710 (9th Cir. 1991) .................................................... 11, 18, 24

*Wood v. Milyard*,
566 U.S. 463 (2012) .................................................... 4

*Young v. United States*,
535 U.S. 43 (2002) .................................................... 20


**Statutes**


26 U.S.C. § 6213 .................................................... 8, 9, 10

26 U.S.C. § 6501 .................................................... 22

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

26 U.S.C. § 7422 .......... 19

26 U.S.C. § 7429(b) .......... 19

28 U.S.C. § 1346(a)(1) .......... 13, 19

28 U.S.C. § 2401(a) .......... *passim*

28 U.S.C. § 2401(b) .......... 20

42 U.S.C. § 2000e-16(c) .......... 10

26 U.S.C. § 7421(a) .......... 2, 12

**Other Authorities**

Fed. R. Civ. P. 1 .......... 17

Fed. R. Civ. P. 2 .......... 17

Tax Ct. R. 39 .......... 4

## INTRODUCTION

This Court invited supplemental briefs addressing whether "the six-year statute of limitations applicable to procedural challenges under the Administrative Procedure Act, 28 U.S.C. § 2401(a), applies to this case and, if so, what the implications are for this appeal." The cited statute does not limit this Court's review of the Tax Court's decision.

As an initial matter, the Commissioner has forfeited and waived reliance on any statute of limitations. He did not raise a limitations defense in his briefing and argument before the Tax Court or this Court. There is no reason for the Court to permit an argument that the Commissioner has failed to raise again and again.

Moreover, section 2401(a) does not constrain Altera's challenge to the Final Rule. There is a separate limitations period that dictates when a taxpayer must initiate a redetermination proceeding in the Tax Court. That special limitations period supplants the generic period prescribed by section 2401(a). But even if section 2401(a) did apply, the six-year period did not begin until Altera was entitled to sue. In other contexts, an aggrieved party may challenge a regulation as soon as it is published in the *Federal Register*. In the tax context, by contrast, federal appellate

courts have consistently held that the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a), bars pre-enforcement challenges (as the Commissioner himself has long contended). Under these precedents, Altera was not entitled to file its Tax Court petitions challenging the validity of the Final Rule until the Commissioner mailed his notices of deficiency for the 2004 and 2005-2007 tax years in December 2011 and January 2012, respectively. Indeed, because the special limitations period for tax challenges lapses just 90 days after the notice of deficiency is mailed, a procedural challenge to a tax regulation will always be filed within six years of when the claim accrues. In any event, by its terms, section 2401(a) applies only to a "civil action"; and a petition to redetermine a tax deficiency is not a "civil action."

Even if Altera's claim somehow accrued before the notice of deficiency issued, equitable considerations would compel tolling the limitations period under the circumstances present here. The Commissioner has been on notice of Altera's contentions about the Final Rule since 2005. Altera would have filed its challenge to the Final Rule earlier but for the extra time the Commissioner required to complete his administrative review. Under these circumstances, it would be grossly

inequitable to preclude Altera from pressing its challenge to the legitimacy of the Final Rule.

Finally, as a practical matter, a determination that section 2401(a)'s limitations period had run would not change the outcome in this appeal. In *Perez-Guzman v. Lynch*, 835 F.3d 1066 (9th Cir. 2016), this Court acknowledged that § 2401(a) does not bar a court from addressing the validity of a regulation under the authorizing statute, even if the regulation was promulgated more than six years before the action was initiated. This analysis under *Chevron* overlaps with the arguments Altera raises under the APA. Accordingly, the Commissioner cannot rely on § 2401(a) to preserve Treasury's arbitrary and capricious Final Rule.

Applying § 2401(a) to cases like this one would leverage the appellate courts' consistent application of the AIA to bar pre-enforcement review to create exactly the kind of "approach to administrative review good for tax law only" that the Supreme Court and other circuits have rejected. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 55 (2011). The lion's share of tax regulations, and only tax regulations, would escape review under the APA. The Court should

resolve this case—a timely appeal from a timely action in the Tax Court—on the merits of all the arguments.

## ARGUMENT

### A. The Commissioner Has Waived or Forfeited Any Statute of Limitations Defense.

By failing to raise a limitations argument in years of proceedings before the Tax Court and this Court, the Commissioner waived or forfeited any limitations period that might apply.

"Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Wood v. Milyard*, 566 U.S. 463, 470 (2012) (quotation marks omitted). "An affirmative defense, once forfeited, is 'exclu[ded] from the case' . . . and, as a rule, cannot be asserted on appeal." *Id.* (citation omitted). Indeed, it is "hornbook law" that "theories not raised squarely in the district court cannot be surfaced for the first time on appeal." *Id.* (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 (1st Cir. 1991)).

Like the district courts, the U.S. Tax Court requires a party to set forth in its pleading "any matter constituting an avoidance or affirmative defense, including . . . the statute of limitations." Tax Ct. R. 39. The Tax Court "has held on numerous occasions that it will not consider issues

which have not been pleaded." *Markwardt v. Commissioner*, 64 T.C. 989, 997 (1975). This Court, moreover, does not consider limitations arguments that were not raised in and resolved by lower courts. *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1044 (9th Cir. 2011) (finding "clear[]" waiver where defendant did not argue the statute of limitations in its summary judgment motion and the district court's opinion did not address it).

Furthermore, this Court has expressly held that section "2401(a)'s six-year statute of limitations," like almost all statutes of limitations, "is subject to waiver." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997); *see also Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1038 n.2 (9th Cir. 2013) (en banc), *aff'd and remanded on other grounds sub nom. United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015).

Here, the rules of forfeiture and waiver are straightforward to apply. The Commissioner did not plead a limitations defense or raise a limitations argument in opposition to summary judgment or in his own motion for partial summary judgment. In this Court, the Commissioner did not raise a limitations argument in his opening brief, in his reply brief, or even in his first supplemental brief—which was filed after Chief

Judge Thomas, in his withdrawn opinion, adverted to section 2401(a). *See* Withdrawn Op. 26 n.6. If the argument were not deliberately waived, therefore, it was at a minimum plainly forfeited on multiple occasions.

We recognize that, in *Perez-Guzman*, a panel of this Court excused the government's failure to raise a timeliness challenge "until supplemental briefing." 835 F.3d at 1077 n.6. But *Perez-Guzman* can hardly be read to endorse delayed limitations challenges in all circumstances.[1] That case was an original action filed in this Court, on direct review of the Board of Immigration Appeals. Neither the petitioner nor the government identified the existence of an on-point regulation in their briefs. The panel identified a regulation as potentially dispositive and directed the parties to file supplemental briefs.

In the supplemental briefing, the petitioner argued, for the first time, that the regulation was invalid. Thus, when the government addressed the timeliness of the regulatory challenge in a second round of supplemental briefing, it was actually raising the argument in the first

[1] The parties' filings in *Perez-Guzman* are sealed, so our understanding of the proceedings is derived from the petition for a writ of certiorari (2017 WL 3726068) and the government's brief in opposition (2017 WL 6399163).

brief after the issue had been joined. So although the court in *Perez-Guzman* "exercise[d] [its] discretion" (835 F.3d at 1077 n.6) to consider the supplemental briefing on timeliness, that decision provides no support for forgiving the Commissioner's repeated, volitional failure to raise the statute of limitations in this case.

*Sua sponte* raising and accepting a long-waived limitations defense here would abuse the Court's discretion. "As a general rule, an appellate court will not consider arguments which were not first raised before the district court, absent a showing of exceptional circumstances." *Monetary II Ltd. P'ship v. Commissioner*, 47 F.3d 342, 347 (9th Cir. 1995) (declining to consider affirmative defense of duress where the party "neither raised this issue below, nor provides any justification for its failure to do so"). This case does not present the "exceptional circumstances" required to overcome the Commissioner's clear and repeated waiver.

Between the Tax Court and this Court, the Commissioner's waiver stretches across pleadings in two Tax Court cases, six briefs, and two oral arguments. Rewarding the government in this way would promote gamesmanship, encouraging the government to withhold timeliness arguments until other arguments had failed. As this case shows,

moreover, applying a limitations period that had been waived for years would waste considerable judicial and party resources.

If that were not enough, a ruling for the Commissioner on the grounds that APA review of the Final Rule is precluded under § 2401(a) would immunize the Final Rule from scrutiny under the APA even though the first taxpayer to work its way through the IRS's administrative review process brought a timely Tax Court challenge to the Commissioner's first determination of a deficiency under the Rule. To reach that conclusion in a case where the Commissioner did not even *raise* the argument would work a manifest injustice, not only as to Altera but as to every other taxpayer subject to the unlawful Final Rule.

### B. 28 U.S.C. § 2401 Does Not Constrain Altera's Challenge to the Final Rule.

In any event, section 2401(a) would not limit these proceedings if it had properly been invoked by the government.

#### 1. Petitions for redetermination of a deficiency are subject to a specific limitations period within the well-developed statutory scheme for review of tax deficiencies.

Section 6213(a) of the Internal Revenue Code provides:

> **(a) Time for filing petition and restriction on assessment.**

> Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed … , the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency.

26 U.S.C. § 6213(a).

There is no dispute that Altera filed timely petitions for the tax years at issue. The Commissioner issued the first notice of deficiency, for tax year 2004, on December 8, 2011. Altera timely filed its petition on March 6, 2012. The Commissioner issued the second notice of deficiency, for tax years 2005 through 2007, on January 23, 2012. Altera timely filed its second petition on April 20, 2012.

This Court has interpreted section 2401(a) as a "catchall statute of limitations provision" that applies only in the absence of a specific limitations period. *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995). "[W]hen legislation contains its own statute of limitations, the more specific limitation preempts a more general statute of limitations." *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation v. United States*, 895 F.2d 588, 594 (9th Cir. 1990).

Applying that principle, the D.C. Circuit has refused to apply section 2401(a) to claims filed under Title VII. *Howard v. Pritzker*, 775

F.3d 430 (D.C. Cir. 2015). As with the Internal Revenue Code's specific provision for challenging notices of deficiency, Title VII provides:

> Within 90 days of receipt of notice of final action taken by a department … an employee or applicant for employment, if aggrieved by the final disposition of his complaint … may file a civil action.

42 U.S.C. § 2000e-16(c). The D.C. Circuit held that applying section 2401(a)'s generic six-year limitations period would be "fundamentally inconsistent" with "Congress's preferred manner of resolving federal employment discrimination complaints," especially given that "lengthy delays [are] part of the administrative process." *Howard*, 775 F.3d at 440.

Here, too, Congress has devised a special statutory scheme for resolving disputes about taxation. "[L]engthy delays" are "part of the administrative process" (*Howard*, 775 F.3d at 440) in the tax context as well, all the more so for complex issues of transfer pricing like those implicated by the Final Rule. The specific timeliness provision in 26 U.S.C. § 6213 therefore trumps the catchall provision in 28 U.S.C. § 2401.

### 2. Altera's challenge to the Final Rule did not accrue until the Commissioner issued his deficiency notice.

Irrespective of which limitations period applies, Altera's challenge to the Final Rule cannot be time-barred because the claim did not accrue until the Commissioner issued his notice of deficiency.

By its terms, section 2401's six-year period does not begin to run until the would-be plaintiff's "right of action first accrues." 28 U.S.C. § 2401(a). A right of action "accrues" for these purposes when "the plaintiff is aware of the wrong *and* can successfully bring a cause of action." *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990) (quoting *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1396 (9th Cir. 1986)) (emphasis added). In particular, "[a] cause of action against an administrative agency 'first accrues,' within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." *Spannaus v. U.S. Dept. of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987); *see Ortiz v. Sec'y of Def.*, 41 F.3d 738, 743 (D.C. Cir. 1994) (calling *Spannaus*'s logic "unassailable").

Ordinarily, a challenge to administrative action accrues when the agency action becomes final. *See Wind River Mining Corp. v. United*

*States*, 946 F.2d 710, 715 (9th Cir. 1991). In the tax context, however, courts have repeatedly held—at the government's urging—that the AIA forbids pre-enforcement challenges to a tax regulation.

The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The statute "generally bars pre-enforcement challenges" to tax regulations and "requires plaintiffs to instead raise such challenges in refund suits after the tax has been paid, or in deficiency proceedings" like this one. *Fla. Bankers Ass'n v. U.S. Dep't of the Treasury*, 799 F.3d 1065, 1066 (D.C. Cir. 2015); *Maze v. IRS*, 862 F.3d 1087, 1093 (D.C. Cir. 2017); *Smith v. Booth*, 823 F.2d 94, 97 (5th Cir. 1987); *accord In re J.J. Re-Bar Corp., Inc.*, 644 F.3d 952, 955 (9th Cir. 2011) (explaining that the AIA generally "precludes federal jurisdiction" over challenges to federal tax collection).

That is why in *Dominion Resources v. United States*, 681 F.3d 1313 (Fed. Cir. 2012), the courts heard (and the Federal Circuit upheld) an APA challenge to regulations that had been promulgated 15 years before the action was brought in the Court of Federal Claims. The plaintiff's

cause of action did not accrue until the Commissioner imposed a disputed tax that the taxpayer sought to have refunded.

Because a claim accrues only when the claimant "can successfully bring a cause of action" (*Shiny Rock Mining*, 906 F.2d at 1364), the critical date for challenging a tax regulation is *not* the date on which the regulation is promulgated. It is the date on which the Commissioner issues the notice of deficiency—sometimes called a taxpayer's "ticket to the Tax Court"—thereby satisfying the "jurisdictional prerequisite to a suit in that forum." *Robinson v. United States*, 920 F.2d 1157, 1158 (3d Cir. 1990); *Laing v. United States*, 423 U.S. 161, 165 n.4 (1976).

The government may argue that Altera could have manufactured a justiciable controversy earlier if it had been willing to prepay the tax that it feared the Commissioner might assert. *See* 28 U.S.C. § 1346(a)(1) (authorizing suits by taxpayers seeking refunds of overpaid taxes). But Altera was not required to injure itself further in order to hasten the ripening of its claim. Just as a regulated party need not undertake an "arduous, expensive, and long" permitting process merely to obtain judicial review under the APA, *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1815-16 (2016), a taxpayer cannot be forced to pay

through the nose for the privilege of challenging a tax regulation. If Congress intended to force taxpayers to choose between their money and a viable rulemaking challenge, it would have said so expressly. Instead, it created two post-enforcement pathways to challenge tax regulations and permitted taxpayers to choose between them.

The D.C. Circuit in *Howard* rejected a similar effort to force claimants to choose between the completion of a congressionally authorized process and the six-year general statute of limitations. Title VII permits employees to sue 180 days after they first pursued administrative remedies, even if they have not received a final notice. However, Congress "set no outer time limit" for those employees "who wished to remain on the administrative path." 775 F.3d at 440. As in *Howard*, it makes no sense within six years of finalization of a Treasury Regulation to require taxpayers to "abandon" their return position that a regulation was invalid, pay the tax, forgo their right to challenge the regulation on a pre-payment basis in Tax Court, and then bring a refund action in federal court, simply to preserve the taxpayer's right to challenge the validity of the regulation under the APA.

Funneling all APA challenges to district court also flies in the face of the general principle that "the Tax Court is the preferred forum for taxpayers who dispute a tax assessment." *Estate of Branson v. Commissioner*, 264 F.3d 904, 911 (9th Cir. 2001). That practice would deprive reviewing courts of the Tax Court's "special expertise." *Merkel v. Commissioner*, 192 F.3d 844, 847-48 (9th Cir. 1999). And a rule that taxpayers must bring refund actions to preserve an APA challenge would seriously disadvantage those who cannot afford to pay an unlawful tax and go through many years of uncertain litigation in order to recover the tax unlawfully extracted. This Court has been appropriately skeptical of drawing "anomalous" distinctions between the Tax Court and the district court that "would, in practice, work substantial prejudice against less affluent taxpayers." *Branson*, 264 F.3d at 911.

In short, Altera's cause of action did not accrue until December 2011, when the Commissioner finally mailed a notice of deficiency determining that Altera owed the tax and allowing Altera to proceed to the Tax Court. It would be perverse to say that, because the Commissioner took eight years after promulgation to apply the Final Rule to Altera, Altera is barred from presenting APA claims in a

deficiency proceeding. "If the operative dispute does not arise until decades later, when the agency applies the earlier rule, such a holding would wall off the agency from any challenge on the merits. The statute of limitations would cease to be a shield against stale claims, and would instead become a sword to vanquish a challenge like the case here, without ever considering the merits." *California Sea Urchin Comm'n v. Bean*, 828 F.3d 1046, 1051 (9th Cir. 2016). That result would flout both the "'strong presumption' favoring judicial review of administrative action," *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015), and the Supreme Court's focus on "maintaining a uniform approach to judicial review of administrative action,'" a principle that applies "with full force in the tax context." *Mayo Found.*, 562 U.S. at 713 (quoting *Dickinson v. Zurko,* 527 U.S. 150, 154 (1999)).

### 3. This case is not a "civil action."

Section 2401(a) sets a six-year time limit for commencing a "civil action … against the United States." The statute does not apply here because a deficiency proceeding is not a "civil action."

As this Court has noted, the words "every civil action" in § 2401(a) "must be interpreted to mean what they say." *Nesovic*, 71 F.3d at 778.

Section 2401(a) "was intended to apply to 'Every civil action' brought in a United States *district* court." *Werner v. United States*, 188 F.2d 266, 268 (9th Cir. 1951) (emphasis added). This makes sense. The term "civil action" "has a sharply defined meaning in the law." *Key Buick Co. v. Commissioner*, 613 F.2d 1306, 1308 (5th Cir. 1980). A civil action is the "one form of action" recognized under the Federal Rules of Civil Procedure, *id*. (citing Fed. R. Civ. P. 2), and those Rules apply only in the district courts. Fed. R. Civ. P. 1.[2]

We are not aware of any decision addressing whether a deficiency proceeding filed in the tax court constitutes a "civil action" under 28 U.S.C. § 2401(a). *Perez-Guzman* applied § 2401(a) to a petition for review from the Board of Immigration Appeals, but the Court did not address

[2] In *Key Buick*, the Fifth Circuit held that the Civil Rights Attorney's Fees Awards Act of 1972—which authorized attorney's fee awards in a "civil action or proceeding, by or on behalf of the United States"—did not authorize fees for a taxpayer who successfully filed a deficiency petition in the Tax Court because the petition was brought by the taxpayer, not "by or on behalf of the United States." 613 F.2d at 1308. The Act permitted the Tax Court to award attorneys' fees if the taxpayer was "cast in a defendant's role" in that forum. *Id*. at 1309. However, the Fifth Circuit stressed that the statute used not only the "sharply defined" term "civil action" but also the "broader and more open-ended" term "proceeding." *Id*. at 1308. By contrast, 28 U.S.C. § 2401(a) refers only to a "civil action."

whether the petition constituted a "civil action"; the Court simply stated that "[p]rocedural challenges to agency rules" were subject to 28 U.S.C. § 2401(a)'s six-year statute of limitations. *Perez-Guzman*, 835 F.3d at 1077. And the case *Perez-Guzman* cited for this proposition involved only "a complaint for review" that was "filed . . . in federal district court." *Wind River*, 946 F.2d at 712; *cf. Estate of Magnin v. Commissioner*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("When a case assumes a point without discussion, the case does not bind future panels.").

In *Wind River*, this Court stressed § 2401(a)'s "civil action" language. As the Court explained, "[w]hile an administrative proceeding is not a 'civil action' within the meaning of section 2401(a)," a "complaint filed in *federal district court* seeking review of an administrative decision" was "another matter." *Id.* at 712 (emphasis added). A petition in the Tax Court, by contrast, is a proceeding outside an Article III court. The Court later repeated its narrow holding: "a suit for review of an agency decision, commenced by filing a civil complaint in federal court, fits the explicit terms of section 2401(a)." *Id.* at 713; *cf. Oppenheim v. Campbell*, 571 F.2d 660, 663 (D.C. Cir. 1978) (affirming the "longstanding proposition" that the term "civil action" in § 2401(a) "is a term of art

judicially and statutorily defined as one 'commenced by filing a complaint with [a] court,' not an executive board").

The statute authorizing Altera to proceed in the Tax Court further supports the point that a petition for redetermination of a deficiency is not a "civil action" within the meaning of 28 U.S.C. § 2401(a). Under 26 U.S.C. § 6213(a), a taxpayer must petition the Tax Court for a redetermination of deficiency within 90 days after the mailing of the notice of a deficiency. This statute does not classify the petition in the Tax Court as an "action." To the contrary, the Code distinguishes petitions under § 6213(a) from "actions or proceedings" in other forums.[3] "It is generally presumed that Congress acts intentionally and purposely

---

[3] *See* 26 U.S.C. § 6213(a) (stating that the Tax Court "shall have no jurisdiction to enjoin any action or proceeding . . . unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition"); *see also* 26 U.S.C. § 7429(b) (authorizing a "civil action" for review of jeopardy levy or assessment procedures and, in subsection (b)(2)(B), giving the Tax Court jurisdiction over those civil actions in certain cases when a taxpayer has filed a petition under 6213(a) for related tax periods). In contrast, the jurisdictional provision authorizing a tax refund suit in district court calls that proceeding a "civil action." 28 U.S.C. § 1346(a)(1). The relevant Code provision is similarly entitled "civil actions for refund." 26 U.S.C. § 7422.

when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994).

### C. In The Alternative, The Limitations Period Should Be Tolled

Even if section 2401(a) applied and Altera's claim accrued before 2011, Altera's claim still should not be barred, because enforcing a time-bar under the circumstances of this case would be inequitable.

"It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 49-50 (2002) (internal quotation marks omitted). The Supreme Court has specifically permitted equitable tolling in actions filed against the United States. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89 (1990); *see also Kwai Fun Wong*, 732 F.3d 1030 (equitably tolling 28 U.S.C. § 2401(b)).

"[L]ong-settled equitable-tolling principles" instruct that "'[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.' " *Credit Suisse Sec. (USA) LLC v. Simmonds*, 556 U.S. 221, 227

(2012) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (emphasis omitted)).

Altera has been pursuing its rights diligently. Altera filed its 2004 tax return in 2005 and attached to the return Form 8275-R, which is used to report that the taxpayer has taken a position contrary to a treasury regulation. *See* ER 130-32 (Ex. 1-J to Tax Court Stipulation). Six years before the Commissioner issued his first notice of deficiency, therefore, the Commissioner was on notice that Altera intended to challenge the reasonableness and validity of the Final Rule.

Thereafter, Altera worked with the government through the audit process, maintaining throughout that the Final Rule was invalid. When the government completed its administrative review, Altera initiated proceedings in the Tax Court within three months. "The standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). Altera meets that standard.

Altera can likewise demonstrate that "extraordinary circumstances" impeded an earlier filing. As discussed above, courts have consistently interpreted the AIA to preclude any pre-enforcement challenge to the Final Rule. Even setting that delay aside, Altera would have filed its challenge within the initial six-year window had the government completed its audit in a more timely manner. Barring circumstances not present here, the IRS ordinarily has 3 years from the date the return is filed to audit the taxpayer and assess any tax. 26 U.S.C. § 6501(a). The Commissioner may, however, extend its time period by agreement with the taxpayer. *See id*. § 6501(c)(4). The Commissioner and Altera agreed here to permit the Commissioner a lengthier administrative review, which is why the Commissioner's notice of deficiency for the 2004 tax year did not issue until 2011. The delays caused by the Commissioner's review are just the sort of delays that cannot equitably be charged against Altera.

The D.C. Circuit has recognized that there is an exception to the six-year limitations period when agency actions "remain[] unripe for judicial review throughout the statutory review period." *JEM Broadcasting Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994). Until the

Commissioner mailed Altera a notice of deficiency, however, any claim Altera might have had with respect to the 2003 rulemaking remained unripe. *See Diamond Shamrock Corp. v. Costle*, 580 F.2d 670, 673 (D.C. Cir. 1978) (appellants failed to show "immediate and practical" impact of challenged effluent limitation regulations and had to wait until regulations were applied in permit proceedings). Indeed, had the Commissioner completed his administrative review within the prescribed three-year period, Altera would have filed its petition in 2008, well within six years of the Final Rule's August 26, 2003 effective date. By asking Altera to extend the time in which to conduct an audit and mail a notice of deficiency, the Commissioner necessarily extended the time in which Altera could petition for redetermination of that notice and, accordingly, challenge the Final Rule as indicated in Altera's Form 8275-R.

In addition to a lack of ripeness, it would be fundamentally unfair to allow the Commissioner to toll his own limitations period and then, after the taxpayer prevailed in the Tax Court, assert a limitations defense on appeal to insulate from APA review the regulation that is the sole basis for the Commissioner's adjustment. The unfairness is especially apparent here, where the Commissioner has been on notice of

Altera's challenge from the start, and where he not only benefited from an extension of the limitations period governing his audit duties but also repeatedly waived any statute of limitations defense in the subsequent litigation. That is reason enough not to overlook the Commissioner's waiver.[4]

### D. Even if Altera's APA Claim Is Time-Barred, *Chevron* Requires The Court To Address The Commissioner's Failure To Engage In Reasoned Decisionmaking.

Even if § 2401(a) applied to this appeal, as a practical matter its effect would be moot. Where § 2401(a) applies, the statute bars consideration of a "mere procedural violation in the adoption of a regulation or other agency action" but does not preclude a "substantive" challenge to an agency's decision as "exceeding constitutional or statutory authority." *Wind River*, 946 F.2d at 713-14. In particular, as the Court explained in *Perez-Guzman*, litigants may challenge a

---

44 Application of § 2401(a) would further encourage agency gamesmanship. Of course, if the IRS had not challenged Altera's 2004 tax return, but instead chose to enforce the Final Rule on the 2005 tax return (timely filed in 2006), application of § 2401(a) would have made any APA challenge to the Final Rule untimely even if the deficiency had been asserted without extending the time for administrative review.

regulation under *Chevron* even if a procedural challenge would be barred as stale under § 2401(a). 835 F.3d at 1078-79.

As the Supreme Court explained in *Judulang v. Holder*, 565 U.S. 42 (2011), "under *Chevron* step two," a court must ask "whether an agency interpretation is 'arbitrary or capricious in substance.'" *Id.* at 52 n.7 (quoting *Mayo Found.*, 562 U.S. at 52). The withdrawn opinion of Chief Judge Thomas agreed that *Chevron*'s second step required the court to determine whether the agency's construction is "arbitrary, capricious, or manifestly contrary to the statute." Withdrawn Op. 38. And the agency's construction is "manifestly contrary to the statute" when it invokes the commensurate-with-income provision of Section 482, which applies only to transfers or licenses of intangibles, to eliminate the role of arm's-length evidence for cost-sharing arrangements.

Accordingly, this Court will "defer to the agency's permissible interpretation" under *Chevron* "only if the agency has offered a reasoned explanation for why it chose that interpretation." *Village of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 660 (D.C. Cir. 2011); *see Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016) ("lack of reasoned explication" means a "regulation does not receive *Chevron*

deference”). The Tax Court also recognized that the Final Rule is deficient under *Chevron* as well as the APA because it rests upon a failure of reasoned decisionmaking. *See* ER 77 n.29.

In sum, under *Chevron* step two, a court must determine “whether the [agency] has reasonably explained how the permissible interpretation it chose is ‘rationally related to the goals of’ the statute.” *Good Fortune Shipping SA v. Commissioner*, 897 F.3d 256, 261 (D.C. Cir. 2018). And in determining whether the agency has engaged in this reasoned analysis, *Chevron* step two demands that the court “look only to ‘what the agency said at the time of the rulemaking—not to its lawyers’ post-hoc rationalizations.’” *Id.* at 263.

Thus, even if § 2401(a)’s six-year limitations period for procedural challenges had run by the time Altera petitioned for a redetermination, the Court would still have to decide whether the Commissioner’s failure to engage in reasoned decisionmaking rendered the Final Rule arbitrary and capricious as a matter of substance—as it certainly is.

## CONCLUSION

The decision of the Tax Court should be affirmed.

Respectfully submitted,

Dated: October 9, 2018

/s/ *Donald M. Falk*

Thomas Kittle-Kamp
William G. McGarrity
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

Donald M. Falk
MAYER BROWN LLP
3000 El Camino Real #300
Palo Alto, CA 94306
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
dfalk@mayerbrown.com

A. Duane Webber
Phillip J. Taylor
Joseph B. Judkins
BAKER & MCKENZIE LLP
815 Connecticut Avenue NW
Washington, DC 20006
Telephone:(202) 452-7000
Facsimile: (202) 452-7074

Brian D. Netter
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Counsel for the Appellee*

## CERTIFICATE OF COMPLIANCE

1. Pursuant to Fed. R. App. P. 32(a) and Ninth Cir. R. 32-1, the undersigned hereby certifies that the attached brief is proportionally spaced, has a typeface of 14 points or more, and contains 5,387 words, exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B).

2. The brief has been prepared in proportionally-spaced typeface using Microsoft Word 2007 in 14-point Century Schoolbook font. As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word-count feature of this word-processing system in preparing this certificate.

October 9, 2018

/s/ *Donald M. Falk*
Donald M. Falk
*Counsel for Altera Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 9, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

October 9, 2018

/s/ *Donald M. Falk*
Donald M. Falk
*Counsel for Altera Corp.*