# Nos. 16-70496, 16-70497

**(Before the Honorable Sidney R. Thomas, C.J., and Susan P. Graber and Kathleen M. O'Malley, JJ. Opinion filed June 7, 2019)**

## In the United States Court of Appeals for the Ninth Circuit

ALTERA CORPORATION AND SUBSIDIARIES,

*Petitioner-Appellee*,

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant*.

ON APPEAL FROM THE UNITED STATES TAX COURT

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF REHEARING *EN BANC***

Steven P. Lehotsky
U.S. CHAMBER
LITIGATION CENTER
1615 H St., N.W.
Washington, D.C. 20062
(202) 463-5337

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com

*Counsel for* Amicus Curiae

## RULE 26.1 DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America is not a publicly traded corporation. It has no parent corporation, and there is no public corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**


INTEREST OF *AMICUS CURIAE* ........................................ 1

SUMMARY OF ARGUMENT ........................................ 3

ARGUMENT ........................................ 4

- I. The Panel Majority Stretches Administrative Law Beyond Its Breaking Point, Departing From Supreme Court Precedent and Its Uniform Application in This Court and Other Circuits ........................................ 4
  - A. The Panel Majority Transforms the APA's Reasoned-Decisionmaking Requirement into a Scavenger Hunt To Uncover the Agency's Reasoning ........................................ 6
  - B. The Panel Majority Eviscerates the APA's Guarantee to the Public of Fair Notice of Regulatory Obligations and Meaningful Participation in the Rulemaking Process ........................................ 11
  - C. The Panel Majority Disregards the Supreme Court's Command To Withhold *Chevron* Deference When an Agency Engages in Defective Rulemaking ........................................ 15
- II. The Panel Majority's Decision Introduces Great Uncertainty for the Business Community and Risks Undermining the National Economy ........................................ 18

CONCLUSION ........................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962) ................ 6

*Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ................ 3, 16

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ... 10

*Cohen v. United States,* 650 F.3d 717 (D.C. Cir. 2011) (en banc) ............ 5

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) ........................ 11

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) ............ 16, 19

*FCC v. Fox Television Stations*, 556 U.S. 502 (2009) ...................... passim

*Home Box Office, Inc. v. FCC*, 567 F.2d 9 (D.C. Cir. 1977) ..................... 10

*Mayo Found. for Med. Educ. & Res. v. United States*, 562 U.S. 44 (2011) ................ 5

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29 (1983) ................ passim

*Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407 (1992) ................ 13

*Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668 (9th Cir. 2007) ................ 7

*Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015) ....... 9, 14, 15, 16

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) (*Chenery I*) .................. passim

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) (*Chenery II*) .......................... 7

*Sequoia Orange Co. v. Yeutter*, 973 F.2d 752 (9th Cir. 1992), *amended on other grounds*, 985 F.2d 1419 (9th Cir. 1993) ............................... 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

## Statutes

5 U.S.C. § 706 .......... 7

## Other Authorities

Adrian Vermeule, Encino *Is Banal*, Yale J. on Reg.: Notice & Comment (June 23, 2016) .......... 16

Kristin E. Hickman, *The Need for* Mead*: Rejecting Tax Exceptionalism in Judicial Deference*, 90 Minn. L. Rev. 1537 (2006) .......... 5

Stephanie Hoffer & Christopher J. Walker, *The Death of Tax Court Exceptionalism*, 99 Minn. L. Rev. 221 (2014) .......... 5

## INTEREST OF *AMICUS CURIAE*[*]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the Nation's business community.

This case presents a question of exceptional importance to the Chamber and its members: Whether the U.S. Department of Treasury ("Treasury") and Internal Revenue Service ("IRS") may evade their obligation to comply with the Administrative Procedure Act ("APA") and related administrative law doctrines. As Federal Circuit Judge O'Malley

---

[*] All parties consent to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), the Chamber certifies: (a) no party's counsel authored this brief in whole or in part; (b) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (c) no person, other than the Chamber, its members, or its counsel, contributed money that was intended to fund preparing or submitting this brief.

(sitting by designation) details in her dissent from the panel opinion, the IRS failed in a number of critical respects to engage in reasoned decisionmaking as required by the APA and Supreme Court precedent. Such arbitrary and capricious rulemaking—which, contrary to blackletter administrative law, the panel endorses here—imposes tremendous negative consequences for the Nation's business community.

The business community has a particular interest in the interpretation and application of the rules governing the administrative process. Businesses face a growing array of regulations, with tax regulations being among the most complex. When planning their operations and investing for the future, businesses have no choice but to rely on those regulations. Businesses, moreover, critically depend on the procedures and protections that the APA provides against arbitrary or otherwise unlawful agency action. Given the breadth of its membership and its long history of challenging regulations that violate the APA, the Chamber is uniquely positioned to speak to the administrative law principles implicated by this case as well as the consequences to the Nation's business community and the national economy of arbitrary agency regulatory activities that upset settled expectations.

## SUMMARY OF ARGUMENT

**I.** The Supreme Court, the D.C. Circuit, and now the Tax Court have properly rejected the IRS's "tax exceptionalism" position that its regulatory activities are not fully governed by the APA and related administrative law doctrines. Although purporting to remain in line, the panel majority breaks ranks by misapplying at least three bedrock administrative law principles—doctrines announced by the Supreme Court and uniformly followed by this Court and its sister circuits.

First, the panel transforms the APA's reasoned-decisionmaking requirement into what Judge O'Malley aptly terms a "scavenger hunt" in search of the agency's reasoning. Second, it eviscerates the APA's guarantee that the public have fair notice of regulatory obligations and a meaningful opportunity to participate in the notice-and-comment rulemaking process. Third, the panel disregards the Supreme Court's command that *Chevron* deference does not apply when an agency engages in a defective rulemaking process.

**II.** The panel majority's decision to allow the IRS to skirt its procedural obligations under the APA has substantial negative consequences for the Nation's business community and thus the national

economy. The business community, for instance, now faces great uncertainty due to potential disuniformity in federal tax law. Businesses within the nine states governed by the Ninth Circuit are bound by this invalid tax regulation, whereas those in the rest of the country likely are not—due to the Tax Court's nationwide jurisdiction

More critically, arbitrary and capricious changes to federal regulations uproot settled expectations among regulated businesses. This is particularly true in the context of tax regulation, where individuals and businesses rely heavily on the existing law when directing their business operations and implementing their investment strategies. The panel majority's departures from settled administrative law establish circuit precedents that could be marshalled to condone arbitrary and capricious agency actions in a variety of regulatory contexts beyond tax.

## ARGUMENT

### I. The Panel Majority Stretches Administrative Law Beyond Its Breaking Point, Departing From Supreme Court Precedent and Its Uniform Application in This Court and Other Circuits

For decades, tax law suffered from what has been coined "tax exceptionalism"—the misperception that tax regulations are not governed by the same long-standing rules of administrative law that generally

apply to any federal agency action.[1] In recent years, however, the Supreme Court and lower courts have correctly rejected tax exceptionalism.[2] In the decision below, fifteen members of the Tax Court unanimously joined that trend, holding that the IRS is bound by the same rules—the APA and related administrative law doctrines—that govern the rest of the federal regulatory state. *See* T.C. Op. 32–48.

Although the panel majority purports to follow suit, its misapplication of administrative law reflects an exceptionalist approach inconsistent with Supreme Court precedent and the uniform application of that precedent in the circuit courts. This Court need not rely on just the petitioner and *amici* to appreciate the panel's errors. The panel majority

---

[1] *See* Kristin E. Hickman, *The Need for* Mead*: Rejecting Tax Exceptionalism in Judicial Deference*, 90 Minn. L. Rev. 1537, 1541 (2006) (describing the "perception of tax exceptionalism that intrudes upon much contemporary tax scholarship and jurisprudence").

[2] *See, e.g.*, *Mayo Found. for Med. Educ. & Res. v. United States*, 562 U.S. 44, 55–56 (2011) (refusing to apply a different standard of review to an IRS interpretation of the tax code than is applied to other federal regulations); *Cohen v. United States,* 650 F.3d 717, 736 (D.C. Cir. 2011) (en banc) (holding that the APA's judicial review provisions apply with full force to a form of IRS guidance known as a notice). *See generally* Stephanie Hoffer & Christopher J. Walker, *The Death of Tax Court Exceptionalism*, 99 Minn. L. Rev. 221, 222–24 (2014) (chronicling how federal courts have rejected tax exceptionalism).

opinion drew a trenchant, 32-page dissent from a Federal Circuit judge sitting by designation.

As Judge O'Malley exhaustively documents in her dissent, the panel majority's opinion "stretches" administrative law "beyond its breaking point" in a manner "inconsistent with [] fundamental [APA] principle[s]." Op. 51. In so doing, the panel majority disrupts the national, uniform application of Supreme Court administrative law precedent in a context—tax regulation—in which there is an overriding need for national uniformity. Part I focuses on three such errors.

### A. The Panel Majority Transforms the APA's Reasoned-Decisionmaking Requirement into a Scavenger Hunt To Uncover the Agency's Reasoning

It is blackletter administrative law that, to survive under the APA's arbitrary and capricious review, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). In what has been termed administrative law's

reasoned-decisionmaking requirement (or "hard look" review), the *State Farm* Court further instructed:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given."

*Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (*Chenery II*). This Court, unsurprisingly, has fully embraced *State Farm*. *See, e.g.*, *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007) (explaining that *State Farm* provides "the principles governing the scope of our review under the arbitrary and capricious standard of § 706(2) of the APA").

The panel majority's departure from this precedent becomes evident in the opinion's second paragraph: "Our task, of course, is not to assess the better tax policy, nor the wisdom of either approach, but rather to examine whether Treasury's regulations are permitted under the statute." Op. 6–7. *State Farm*, of course, requires more. It is not sufficient to conclude that the *substance* of the agency's final rule is per-

missible under the agency's governing statute. The reviewing court must ensure that the agency's regulatory *process* reflects reasoned decisionmaking. The panel's approach, by contrast, is more like "no look," rather than a "hard look," into the agency's decisionmaking process.

Faithfully applying *State Farm*, the Tax Court and Judge O'Malley (Op. 61–70) had little trouble concluding that the IRS flunked this APA test. The fifteen tax experts on the Tax Court unanimously agreed that "the final rule lacks a basis in fact," that "Treasury failed to rationally connect the choice it made with the facts found," and that "Treasury's conclusion that the final rule is consistent with the arm's-length standard is contrary to all of the evidence before it." T.C. Op. 69. The IRS's failure perhaps should come as little surprise, as the IRS seemed to argue before the Tax Court that the agency was not even required to engage in reasoned decisionmaking. *See id.* at 47 (rejecting the IRS's argument that the Tax Court "should not review the final rule under *State Farm* because the Supreme Court has never, and [the Tax] Court has rarely, reviewed Treasury regulations under *State Farm*").

Critically, despite applying a traditionally fact-intensive arm's-length standard, the IRS did not even attempt to conduct any factfind-

ing regarding the rule's central assumption that unrelated parties entering into qualified cost-sharing agreements would generally share stock-based compensation costs. *See* T.C. Op. 52 & n.20 (noting IRS's concession that it did no factfinding). In other words, as the Tax Court concluded, the IRS "entirely failed to consider an important [empirical] aspect of the problem." *State Farm*, 463 U.S. at 43.[3]

The IRS also failed to consider, much less respond to, numerous relevant and significant comments lodged during the public comment period. The Supreme Court has repeatedly emphasized that "[a]n agency must consider and respond to significant comments received during the period for public comment." *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015) (citing *Citizens to Preserve Overton Park, Inc. v.*

---

[3] It is revealing that a group of law professors submitted an *amicus curiae* brief in support of the IRS that purports to provide an "alternative argument" that theorizes and assesses potential empirical evidence on "what unrelated parties would have done in comparable circumstances, and to which evidence from uncontrolled transactions, properly adjusted, could be relevant." Brief of *Amici Curiae* J. Richard Harvey *et al.*, at 2–3. It is, of course, not appropriate under the APA to consider such evidence and arguments that were not part of the administrative record—much less expressly considered in the agency's final rule—to uphold an agency's rule. *See* Part I.B *infra*. But *amici*'s arguments confirm the agency's fatal error in not conducting factfinding during the notice-and-comment rulemaking process.

*Volpe*, 401 U.S. 402, 416 (1971)). That is because this APA-guaranteed "opportunity to comment is meaningless unless the agency responds to significant points raised by the public." *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35–36 (D.C. Cir. 1977) (footnote omitted).

The Tax Court detailed at length the variety of significant comments to which the IRS provided no meaningful response. *See* T.C. Op. 59–65. Many concerned the critical empirical inquiry into whether unrelated parties entering into qualified cost-sharing agreements would generally share stock-based compensation costs. "Treasury's failure to adequately respond to commentators," the Tax Court concluded, "frustrates [the court's] review of the final rule and was prejudicial to the affected entities." *Id.* at 65.

The problem with the panel majority's refusal to enforce the APA's reasoned-decisionmaking requirement, Judge O'Malley astutely observes, is that it "endorses a practice of requiring interested parties to engage in a scavenger hunt to understand an agency's rulemaking proposals." Op. 51. Even assuming businesses could succeed at such scavenger hunts, the process would impose substantial costs. The regulated businesses would never know what to search for in the administrative

record. The onus cannot be on businesses to anticipate what the agency will do and then to search the administrative record for scraps that would support that prediction. Rather, it is on the agency to "offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575–76 (2019).

### B. The Panel Majority Eviscerates the APA's Guarantee to the Public of Fair Notice of Regulatory Obligations and Meaningful Participation in the Rulemaking Process

In an attempt to salvage its 2003 rule after the fact, the IRS argued before the Tax Court that the rule can be justified under the commensurate-with-income standard and that the IRS could issue regulations that modify—or even abandon—the arm's-length standard. The Tax Court properly rejected this argument based on two bedrock principles of administrative law. *See* T.C. Op. 49–51 & n.19, 67–69.

First, the Supreme Court has long held that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (*Chenery I*). As Judge O'Malley explains, neither the proposed rule nor the final rule

suggested that the IRS intended to abandon the traditional arm's-length standard, and thus any mention of the commensurate-with-income standard in the rule was not a separate and independent rationale for the agency's decision. *See* Op. 66–70.

Second, to the extent the IRS intended to change its longstanding position that the commensurate-with-income standard is consistent with the arm's-length standard, it was certainly required to at least recognize in the rulemaking process that it intended to change its position. In *FCC v. Fox Television Stations*, the Supreme Court held that the APA's "requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." 556 U.S. 502, 515 (2009); *see also id.* ("And of course the agency must show that there are good reasons for the new policy.").

The panel majority pardons the IRS's violations of these bedrock principles articulated in *Chenery I* and *Fox*. In the now-withdrawn opinion, the panel majority asserted that "[t]his argument twists *Chenery*, which protects judicial deference by strengthening administrative pro-

cesses, into excessive proceduralism." Withdrawn Op. 33. In the current opinion, the panel majority now argues that "*Chenery* does not require us to adopt Altera's position as to how the arm's length standard operates. Instead, we must 'defer to an interpretation which was a necessary presupposition of [the agency's] decision,' if reasonable, even when alternative interpretations are available." Op. 40 (quoting *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 419–20 (1992)).

Neither excuse for failing to follow the seminal *Chenery I* doctrine is persuasive. Indeed, as Judge O'Malley observes, "[t]he majority accepts the latest of the Commissioner's ever-evolving post-hoc rationalizations and then, amazingly, goes even further to justify what Treasury did here." Op. 67. The IRS's latest post-hoc rationalization is not a "necessary presupposition" of the agency's regulation, as the panel majority suggests to avoid the *Chenery I* bar. The Supreme Court emphasized in the very case on which the panel majority relies that, to be a "necessary presupposition," the agency's interpretation must be "the only reasonable reading of the [agency's action], and the only plausible explanation of the issues that the [agency] addressed after considering the factual submissions by all of the parties." *Nat'l R.R. Passenger*, 503 U.S. at 420.

Judge O'Malley and fifteen judges on the Tax Court all beg to differ that the IRS's post-hoc rationalization was the *only* reasonable and *only* plausible reading of the regulation. Indeed, as detailed in Part I.A, they all agree that such a reading would be unreasonable and implausible.

*Chenery I* and *Fox*, as well as *State Farm* and *Mortgage Bankers,* are not mere proceduralism. "The APA's safeguards," as Judge O'Malley explains, "ensure that those regulated do not have to guess at the regulator's reasoning; just as importantly, they afford regulated parties a meaningful opportunity to respond to that reasoning." Op. 68. The Chamber and its members are often involved in notice-and-comment rulemaking in a variety of regulatory contexts. Based on this extensive experience, the Chamber confirms Judge O'Malley's observation that "Treasury's notice of proposed rulemaking ran afoul of these safeguards by failing to put the relevant public on notice of its intention to depart from the traditional arm's length analysis." *Id.*

Had the IRS provided notice of this dramatic change, the affected businesses and trade organizations would have responded vigorously and substantially during the comment period. And the IRS would have been required to respond to those significant comments in the final rule.

*See, e.g.*, *Mortgage Bankers*, 135 S. Ct. at 1203 ("An agency must consider and respond to significant comments received during the period for public comment."); *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 758 (9th Cir. 1992) (embracing D.C. Circuit precedent that the "APA's purpose is to cause agency to respond to comments in a reasoned manner and explain how agency resolved problems"), *amended on other grounds*, 985 F.2d 1419 (9th Cir. 1993).

Simply put and contrary to the panel majority's conclusion, confining agencies to the positions they plainly took in notice-and-comment rulemaking is a bedrock principle of administrative law. It ensures the agency engages in reasoned decisionmaking and exercises its discretion in a nonarbitrary manner. As detailed in Part II, an agency's *post hoc* departure from the positions it set forth during the rulemaking process, by contrast, risks upsetting the industry's reliance interests and, in turn, negatively affecting the national economy.

### C. The Panel Majority Disregards the Supreme Court's Command To Withhold *Chevron* Deference When an Agency Engages in Defective Rulemaking

Not only does the panel majority contravene the basic administrative law doctrines articulated by the Supreme Court in *State Farm*,

*Chenery I*, *Fox,* and *Mortgage Bankers*. *See* Parts I.A–I.B *supra*. It compounds these errors by deferring to the IRS's statutory interpretation under *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). *See* Op. 24–33.

*Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016), is instructive—indeed, controlling. There, the Supreme Court found that the "regulation was issued without the reasoned explanation that was required in light of the [agency's] change in position and the significant reliance interests involved." *Id.* at 2126. Accordingly, the Supreme Court refused to accord any deference. *Id.* at 2127. That is because, when agency "procedures are defective, a court should not accord *Chevron* deference to the agency interpretation." *Id.* at 2125.[4]

The IRS's procedural errors here are more egregious than the agency's in *Encino*. Not only did the IRS fail to engage in reasoned decisionmaking as required by *State Farm* and the APA's arbitrary-and-capricious standard (Part I.A), but the IRS has attempted to advance a

[4] As Harvard Law Professor Adrian Vermeule has observed, this holding of *Encino* was "a point established long ago and confirmed in *FCC v. Fox* and *Perez v. Mortgage Bankers*." Adrian Vermeule, Encino *Is Banal*, Yale J. on Reg.: Notice & Comment (June 23, 2016), http://yalejreg.com/nc/encino-is-banal-by-adrian-vermeule/.

new statutory interpretation not proffered during the rulemaking, in contravention of *Chenery I*, *Fox,* and the APA's notice-and-comment rulemaking requirements (Part I.B).

The dangers inherent in the IRS's tactics should be plain: the IRS wants to take advantage of the agency discretion afforded by judicial deference doctrines that apply to administrative interpretations of law without also being bound by the constraints administrative law imposes on federal agency action in order to ensure an agency's discretion is not exercised in an arbitrary and capricious manner. The Supreme Court, the D.C. Circuit, and now the Tax Court have rejected any such claims of tax exceptionalism. It is imperative that this Court send a clear message to the IRS that it must play by the same rules of the road that govern the rest of the federal regulatory state. The danger here is not just that tax regulation in the Ninth Circuit will be inconsistent with the rest of the country. The panel majority's misapplication of administrative law in the tax context invites equally arbitrary and unpredictable rulemaking from other administrative agencies, too.

## II. The Panel Majority's Decision Introduces Great Uncertainty for the Business Community and Risks Undermining the National Economy

The panel majority's decision to allow the IRS's arbitrary and capricious rulemaking imposes real-world and substantial impacts on the Chamber's members. As a preliminary matter, businesses are now subject to this new, invalid IRS interpretation of its 2003 regulation within the nine states encompassing the Ninth Circuit. Yet, due to the Tax Court's nationwide jurisdiction, the IRS's interpretation likely remains invalid throughout the rest of the country. *See* Altera *En Banc* Pet. 20–21 & n.2 (citing cases and examples). Such disuniform application of federal tax law, standing alone, should counsel *en banc* intervention.

More fundamentally, businesses depend on clear and predictable rules—and fair and nonarbitrary administrative processes—when planning their operations and investing for their businesses. This is particularly true of tax regulations. An agency's refusal to be constrained by administrative law's procedural protections creates destabilizing uncertainty for the individuals, businesses, and industries regulated by those laws. Such arbitrary bureaucratic behavior, moreover, can disrupt an industry's settled expectations and investments, with

profound economic consequences for the industry and, in turn, for the national economy.

This does not mean, of course, that federal agencies can never alter the regulatory landscape. But when changing existing regulations, agencies must follow the APA and related administrative law doctrines, which ensure that agencies develop the regulations with the benefit of comments from the affected community and other experts, thus preserving democratic processes and producing the best possible rules. "In explaining its changed position," the Supreme Court has counseled, "an agency must also be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino*, 136 S. Ct. at 2120 (quoting *Fox*, 556 U.S. at 515).

The IRS's rulemaking here falls far short of the reasoned decisionmaking required by the APA and the Supreme Court. In the process the IRS has arbitrarily upset settled expectations. This Court should not let the panel majority decision stand. Instead, it should grant rehearing *en banc* and affirm the Tax Court's unanimous decision to set aside this tax regulation as unlawful under the APA.

## CONCLUSION

For these reasons, the Court should grant rehearing *en banc*.

Respectfully submitted,

August 1, 2019

/s/ Christopher J. Walker

Steven P. Lehotsky
U.S. CHAMBER
LITIGATION CENTER
1615 H St., N.W.
Washington, D.C. 20062
(202) 463-5337

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW*
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com
* *Institutional affiliation provided for identification purposes only.*

*Counsel for* Amicus Curiae

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Ninth Circuit Rule 29-2(c) because it contains 3,874 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook font.

August 1, 2019

/s/ Christopher J. Walker
Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I filed the forgoing brief using this Court's Appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users, such that service will be accomplished by the appellate CM/ECF system.

August 1, 2019

/s/ Christopher J. Walker

Christopher J. Walker
*Counsel of Record*
THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW
55 West 12th Avenue
Columbus, OH 43210-1391
(614) 247-1898
christopher.j.walker@gmail.com